Dennis BERKLA; Dennis Berkla, dba Digarts Software, Plaintiffs–Appellants,

v.

COREL CORPORATION, a Canadian corporation, Defendant–Appellee,

and

Corel Corporation (USA) Inc., Defendant.

Dennis Berkla, dba Digarts Software, Plaintiff–Appellant,

v.

Corel Corporation, a Canadian corporation; Corel Corporation (USA) Inc., Defendants–Appellees.

Dennis Berkla, dba Digarts Software, Plaintiff–Appellee,

v.

Corel Corporation, a Canadian corporation; Corel Corporation (USA) Inc., Defendants–Appellants.

Nos. 00–15166, 00–15350 and 00–15508.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 2002.

Filed May 9, 2002.

Amended Aug. 2, 2002.

James E. Houpt, Orrick, Herrington & Sutcliffe LLP, Sacramento, CA, for Dennis Berkla.

Bradford C. Lewis and Patrick Eugene Premo, Fenwick & West LLP, Palo Alto, CA, for Corel Corporation and Corel Corporation (USA) Inc.

Before: HUG and TASHIMA, Circuit Judges, and SEDWICK, District Judge.*

Opinion by Judge TASHIMA; Partial Concurrence and Partial Dissent by Judge SEDWICK.

### ORDER

The opinion filed on May 9, 2002, slip op. at 6739, and reported at 290 F.3d 983, is withdrawn and replaced by the amended opinion filed concurrently with this order. With the filing of the amended opinion, the panel has voted to deny the petition for panel rehearing. Judge Tashima votes to deny the petition for rehearing en banc and Judges Hug and Sedwick so recommend. The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on en banc rehearing. *See* Fed. R.App. P. 35(f).

The petition for panel rehearing and the petition for rehearing en banc are denied.

### OPINION

TASHIMA, Circuit Judge.

Dennis Berkla designs electronic databases that allow users to create realistic images of natural settings on the computer screen. In 1997, Berkla contacted Corel Corporation ("Corel") and they initiated discussions about the possibility of Corel licensing Berkla's image file databases for inclusion in upcoming versions of Corel's software. After the parties executed a nondisclosure agreement ("NDA"), Berkla submitted to Corel some of his image file databases for evaluation. Corel eventually rejected Berkla's submission. Berkla later discovered that CorelDRAW 8, with its application program Photo Paint 8, con-

---

* The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

tained image file databases similar to his own. Berkla brought this lawsuit against Corel, alleging copyright infringement, breach of contract, unfair business practices, and breach of confidence. After trial, the jury awarded Berkla compensatory and punitive damages.[1] The district court disallowed the jury's award of punitive damages and denied both parties' motions for attorney's fees and costs. We have jurisdiction over these multiple appeals from the amended judgment and two post-judgment orders pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

## I. BACKGROUND

### A. Factual Background

Berkla is a visual artist from Chico, California, who, in 1994, started a small company, DigArts Software ("DigArts"), to design computer-based illustration tools. Berkla created image file databases, or nozzles, that contained images of plants and natural objects that were sprayed like paint out of an image hose tool to design realistic illustrations of trees and foliage. He released a variety of nozzle products under the names Garden Hose and Tubular Text. These nozzle products were not, by themselves, functional, but rather were designed to be used in connection with an image hose tool to create natural looking gardens and landscapes.

Fractal Design Corporation ("Fractal") is a computer software company that by 1994 had developed an image hose tool called Painter that enabled users to create graphics by spraying nozzle-based images. In 1995 and 1996, Berkla entered into two separate licensing agreements with Fractal that granted Fractal the right to distribute Berkla's Garden Hose 1.0 and Garden Hose 2.0 as stand alone CD–ROM add-ons to Fractal's Painter program. These agreements were concluded after Berkla threatened Fractal with litigation for including his protected ideas and designs in Fractal's Painter product in violation of the parties' NDA. Steve Guttman, Fractal's Vice President of Marketing, stated that the Garden Hose product was Fractal's best-selling add-on ever.

In 1996, Corel released Photo Paint 7, a graphics-design program within the Corel-DRAW suite, which contained an image hose tool similar to Fractal's Painter. Photo Paint 7 was comprised of approximately ten nozzles that included images of foliage. On March 26, 1997, Berkla, who had initiated a business relationship with Corel as an independent "solutions partner,"[2] sent an email to Doug Chomyn, Corel's product manager for Photo Paint:

I produce small, successful, add-on products for Fractal Design Corp. The products support Painter's Image Hose technology and go by the name Garden Hose. I'd like to support PhotoPaint's Image Sprayer as well. Before I can do that, however, I need to know what level of developer support Corel offers small independents such a[sic] DigArts? If you have any questions or wish to talk with me, please feel free to contact me.... If you're unfamiliar with the Garden Hose, you can view samples at: http://www.dcs-chico.com/digarts/.

Chomyn replied to Berkla's email on April 2, 1997:

1. As noted in Part I.B, below, the jury's award of punitive damages was "advisory" in character because the issue actually had been withdrawn from consideration.

2. Berkla had been approved for "premier status" in Corel Solutions Partners. According to the district court, "[t]his arrangement gave Berkla some non-public benefits with Corel products as well as enhanced visibility to Corel customers of certain Berkla products or applications. Corel hoped to receive in turn some third-party technical input on Corel products."

Thanks for the message, but it is not clear as to the nature of your "Add-on" products, or how they would relate to our Image Sprayer Tool; our Image Sprayer Tool implementation and capability is quite different from that of the Image Hose tool in Fractal Design's Painter. Could you give me some idea as to what you are looking for with respect to developer support? We do not "offer" any developer support per se, although we do sometimes contract work to out-of-house developers, and sometimes purchase the rights to third-party products.

Please send/transmit more information . . .

Berkla responded to Chomyn with several technical questions about Photo Paint. He then stated: "As for developer support in a financial sense, I'm not asking for money. I'm happy to take a look at manufacturing as a third party developer though I'd likely need some tangible form of marketing support. If your [sic] interested in purchasing rights, we can talk about that too." On April 3, Chomyn emailed Berkla the answers to his questions. He concluded by telling Berkla "[i]f you're selling files to be used as image lists ("nozzles"), I'd like to evaluate what you have to offer. If you'd be willing to send me copies for evaluation purposes, I'd happily oblige you with an evaluation copy of Photo–Paint 7 Plus." Berkla responded the next day that Chomyn had answered most of his questions and encouraged Chomyn to visit Berkla's website.

Chomyn responded on April 7: "If you're interested in selling 'nozzle' files to Corel, it would be good to get a graphical catalog and/or copies of what you have to offer. . . ." Berkla emailed Chomyn two days later that he would send him a CD with the relevant nozzle files: "If you're still interested after working with the files, we can discuss licensing terms." After Chomyn requested that Berkla send the nozzle files in a "universal format," Berkla sent the following email on April 11:

I'd like to send you some of the new stuff since that's what the product will contain. However, I'm not comfortable doing that without an NDA.

If you have a problem with NDA's [sic], I can simply send you the shrunk-wrap, Garden Hose CD since that grants you and [sic] end-user license. Unfortunately, it's a smaller, older product than the one I have in mind and doesn't contain the new files, which comprise over 35% of the content.

You can access some new, demo (smaller) nozzles via my web site. The end-user license will adequately cover my proprietary/intellectual ´property rights.

Chomyn replied two days later: "I'd be happy to sign your NDA on behalf of Corel. This is quite common; I'm often in the position of evaluating new stuff under these circumstances."

Chomyn executed the NDA and faxed it to Berkla on April 14. The NDA contained the following nondisclosure provision:

Recipient agrees that neither Recipient nor any of its employees or agents shall disclose or use (except for the purpose of providing the services or products that Recipient has agreed with the Company to provide or other purposes expressly agreed to in writing between the Company and Recipient) any Confidential Information. Recipient shall not communicate or disclose Confidential Information to any third party. Internal access shall be limited on a "need to know" basis for the purpose of providing the services or products that the Recipient has agreed with the Company that it will provide. Recipient shall neither use Confidential Information nor circulate it within its own organization except for

the foregoing purposes. Recipient will maintain a list of Recipient personnel permitted access to the Confidential Information and will, upon request, provide the Company with a copy of the list.[3]

The NDA also provided that "[i]n any action relating to this Agreement, the non-prevailing party, shall pay the expenses (including without limitation reasonable attorneys' fees) of the prevailing party."

In mid-April 1997, after the NDA was signed, Berkla submitted a beta CD of his Garden Hose images to Chomyn for evaluation. Berkla's original CD, which bore the inscription "DigArts Image Lists (for review) © Dennis Berkla," was copied by Corel. Twelve Corel employees had access to the CD or may have viewed some images contained therein. Katie Gray, Corel's Digital Content Manager at the time, gave Berkla's CD to Dan Dudley, the head of Corel's Content Development Group. Gray testified to having the following conversation with Dudley: "I said to Dan, these images were very good quality. And ... we are interested in licensing them perhaps. Can you guys meet this quality and do us—make us some more of these?" Soon thereafter, Berkla was informed by Gray that Corel would not license Berkla's image file databases. Corel was unable to locate Berkla's original beta CD and therefore never returned it to him.

In October 1997, Corel sent 19 of its beta testers[4] a beta CD of its pre-release version of CorelDRAW 8/Photo Paint 8, which contained exact duplicates of 91 of Berkla's Garden Hose nozzles. The duplicates were not identified as Berkla's product. Berkla began to suspect that Corel had copied his images during a conversation with David Huss, a Corel tester who informed Berkla that Corel had designed eucalyptus files that would paint remarkably realistic trees. Berkla, suspicious that the images Huss referred to were his own, forwarded Huss a copy of his eucalyptus files. Huss subsequently informed Chomyn that he thought some of the images on the beta version of CorelDRAW 8 were not Corel product. Corel removed all exact duplicates of Berkla's image files before the final version of CorelDRAW 8 was released in November 1997.

On November 7, 1997, Berkla faxed a letter to Michael Cowpland, President of Corel, in which he expressed concern about the use of his ideas and techniques in developing Corel–DRAW 8. Given the existence of the NDA and the absence of any licensing agreement, Berkla informed Cowpland that "any use of my proprietary ideas, designs, or techniques is inappropriate." Berkla, however, left open the possi-

---

**3.** The NDA did not specifically list what information was deemed confidential. Instead, it provided the following definition:

> Included within the meaning of Confidential Information are matters of a technical nature (such as inventions, know-how, formulas, computer programs, software, documentation, secret processes or machines, and research projects), matters of a business nature (such as information about costs, profits, markets, sales, customers, potential customers, suppliers and employees), plans for further product developments, and any other information of a similar nature not available to the public.

> Information shall not be deemed to be "Confidential Information" to the extent that it was (a) in the public domain at the time of the Company's communication thereof to Recipient or subsequently enters the public domain without breach of any confidentiality obligation to the Company, or (b) already in Recipient's possession free of any obligation of confidence at the time of the Company's communication thereof to Recipient.

**4.** Beta testers assist software manufacturers in working out glitches or suggesting improvements in the software prior to its release to the public.

bility of further negotiations: "Though I remain ready and willing to negotiate a licensing agreement for my product, that agreement must be reached prior to the commercial release of your competing product."

Cindy McGann, Corel's corporate counsel, responded to Berkla by letter, asserting that "[w]hile Corel's Image List files include files that represent elements from nature which are similar in content (only) to your files, we cannot agree that in the creation of our files, we used your ideas and/or techniques." McGann went on to state: "Though the imaginative use of Corel-supplied Image List files with our Image Sprayer tool can result in the creation of landscape or still-life style imagery (similar to that which could be created through the use of your files), this similarity in end result is due to the inherent nature of the technology that Corel used to develop our Image List files. It is not due to any misappropriation by Corel of your ideas, designs or techniques."

### B. Procedural Background

Berkla commenced this action on June 19, 1998, alleging claims for copyright infringement, breach of the NDA, unfair competition, and breach of confidence. He did not specifically request punitive damages.

On June 11, 1999, Berkla offered to settle his claims against Corel for $1.6 million; Corel responded with a counteroffer of $200,000. After a court-facilitated settlement conference, Corel increased its offer to $400,000. Berkla declined this offer because Corel refused to cast it as an offer of judgment under Federal Rule of Civil Procedure 68.[5]

On September 9, 1999, the district court granted summary judgment in Corel's favor on Berkla's copyright claims, with the exception of the claim pertaining to Corel's dissemination of Berkla's image files to Corel beta testers. With respect to Berkla's state law claims, the district court denied Corel's summary judgment motion to the extent that the claims predated the public dissemination of Berkla's image files in version 1.5 of Garden Hose in 1997.

After trial commenced, the district court denied Berkla's request to include punitive damages in the pretrial order, ruling that because Berkla's breach of confidence claim was substantively identical to his breach of contract claim, punitive damages were unavailable.[6] The district court, however, permitted punitive damages to be presented to the jury on an advisory basis in order to avoid the need for a new, separate trial, if its decision were reversed on appeal.

The jury found that: (1) Corel breached the NDA with Berkla; (2) Corel breached confidence with Berkla; and (3) Corel acted with fraud, oppression, or malice with respect to the breach of confidence claim.[7] During the damages phase, the jury awarded Berkla $23,500 in compensatory damages for the improper use of confidential information and $235,000 in punitive damages. Berkla was also awarded one dollar in nominal damages for "other breaches" of the NDA. Judgment was entered on the verdict after striking the award of punitive damages.

---

5. Corel renewed its $400,000 offer in October 1999. Berkla responded with a counteroffer of $900,000, which was rejected.

6. During trial, Berkla voluntarily abandoned his unfair competition claim.

7. Corel had also stipulated to copyright infringement liability with respect to the 91 image files sent to its beta testers and to an award of $9,100 in statutory damages on that claim.

Berkla and Corel each filed motions for attorney's fees, as well as their respective costs bills. The district court denied both sides' motions for attorney's fees and costs.

## II. STANDARD OF REVIEW

 The availability of punitive damages is a question of law that we review *de novo*. *EEOC v. Wal–Mart Stores, Inc.,* 156 F.3d 989, 992 (9th Cir.1998). The district court's decision to deny attorney's fees is reviewed for an abuse of discretion. *Shaw v. City of Sacramento,* 250 F.3d 1289, 1293–94 (9th Cir.2001). Supporting findings of fact are reviewed for clear error. *Roy Allan Slurry Seal v. Laborers Int'l Union Local Union 1184,* 241 F.3d 1142, 1145 (9th Cir.2001). Whether the district court applied the correct legal standard is reviewed *de novo*. *Siegel v. Fed. Home Loan Mortgage Corp.,* 143 F.3d 525, 528 (9th Cir.1998). A district court's denial of costs is also reviewed for an abuse of discretion. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 968 (9th Cir.1999).

## III. ANALYSIS

Berkla contends that the district court erred in disallowing the award of punitive damages on his breach of confidence claim and in denying his attorney's fees and costs. In its cross-appeal, Corel contends that it was error for the district court to deny its request for attorney's fees.

### A. Punitive Damages

 California law provides for punitive damages in specified actions: [8]

In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or mal-

ice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ.Code § 3294(a). Thus, punitive damages, which are designed to punish and deter wrongful conduct, are not available in breach of contract actions. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 481, 869 P.2d 454 (1994).

 California courts specifically recognize the tort of breach of confidence. *Faris v. Enberg,* 97 Cal.App.3d 309, 158 Cal. Rptr. 704, 711 (1979). "This tort is based upon the concept of an implied obligation or contract between the parties that confidential information will not be disclosed." *Enter. Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1226– 27 (9th Cir.1997) (construing California law); *see also Tele–Count Eng'rs, Inc. v. Pac. Tel. & Tel. Co.,* 168 Cal.App.3d 455, 214 Cal.Rptr. 276, 279 (1985). "To prevail on a claim for breach of confidence under California law, a plaintiff must demonstrate that: (1) the plaintiff conveyed 'confidential and novel information' to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Enter. Research Group,* 122 F.3d at 1227.

In his breach of confidence claim, Berkla alleged that Corel had violated the parties' understanding to maintain in confidence the contents of Berkla's beta CD by "misappropriating the images and nozzles on the CD, disclosing the contents of the CD to individuals who did not have a *bona fide*

---

8. The parties agree that the punitive damages claim is analyzed according to California law.

*Bass v. First Pac. Networks, Inc.,* 219 F.3d 1052, 1055 n. 2 (9th Cir.2000).

reason for access, and otherwise unlawfully disclosing and utilizing the contents of the CD." In finding Corel liable for breach of confidence, the jury found that Corel acted "with fraud, oppression or malice" and awarded punitive damages of $235,000. Nonetheless, in accordance with its earlier ruling, the district court struck the punitive damages award, holding that Berkla's claim for breach of confidence was "indistinguishable" from his breach of contract claim and therefore provided no basis for a recovery of punitive damages. The district court rested its denial of punitive damages on California case law denying tort remedies on claims that are intimately related to underlying contracts.

The issue tendered for decision is whether, under California law, breach of confidence is a true tort that affords traditional tort remedies or is instead akin to a contract action that precludes punitive damages. The district court's position finds support in California cases that have taken an increasingly narrow view of a plaintiff's right to recover tort damages for a claim that arises from the breach of an underlying contract. See Erlich v. Menezes, 21 Cal.4th 543, 87 Cal.Rptr.2d 886, 891, 981 P.2d 978 (1999); Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal.4th 85, 44 Cal.Rptr.2d 420, 430–31, 900 P.2d 669 (1995); Foley v. Interactive Data Corp., 47 Cal.3d 654, 254 Cal.Rptr. 211, 217–18, 765 P.2d 373 (1988). There is also support, however, for Berkla's position that the tort of breach of confidence creates an independent obligation that is separate and distinct from any contractual duty and therefore permits the recovery of punitive damages. See Fink v. Goodson–Todman Enters., 9 Cal.App.3d 996, 88 Cal. Rptr. 679, 690 (1970).

■ We are not required, however, definitively to resolve the question of whether punitive damages are theoretically available when a party has proven its breach of confidence claim. Berkla would nevertheless be precluded from collecting them here. That is so because the tort of breach of confidence is grounded on an implied-in-law or quasi-contractual theory, see Fink, 88 Cal.Rptr. at 690, that is coterminous with his claim for express breach of the NDA claim. California courts have made clear that these two causes of action are mutually exclusive: "There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." Wal–Noon Corp. v. Hill, 45 Cal.App.3d 605, 119 Cal.Rptr. 646, 650 (1975); accord Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal.App.4th 1410, 49 Cal.Rptr.2d 191, 197 (1996). As Berkla recovered on his NDA claim, tort remedies under his breach of confidence claim are therefore unavailable.[9] Accordingly, we conclude that the district court did not err in its decision to strike punitive damages.[10]

## B. Berkla's Motion for Attorney's Fees and Costs

### 1. Attorney's Fees

■ After trial, Berkla moved for attorney's fees in the amount of $526,477 under the attorney's fees provision of the NDA. The district court denied Berkla's request

---

**9.** Although the facts here do not permit Berkla to pursue remedies under both the breach of contract and the breach of confidence claims, this is not to say that a party will necessarily plead itself out of court if, in the face of a breach of an express NDA, it elects also to assert a breach of confidence claim arising out of a common nucleus of fact.

**10.** Corel also argues that Berkla is precluded from recovering punitive damages on his tort claim under the doctrine of judicial estoppel and on due process grounds. Because we have concluded that the district court correctly denied punitive damages on state law grounds, we need not address these issues.

for attorney's fees, finding that he was not the "prevailing party" on either his contract or tort claims and therefore was not entitled to attorney's fees under state law.[11] Berkla contends that the district court applied the wrong statute in rejecting his request.

California permits parties to allocate attorney's fees by contract. *See* Cal.Civ. Proc.Code § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties...."). This ability to contract out of the American rule, under which each party pays its own attorney's fees, is circumscribed, however, by California Civil Code § 1717, which was "enacted to limit the ability of a dominant contracting party to provide for a right to attorney's fees on only one side of an agreement." *Sears v. Baccaglio*, 60 Cal.App.4th 1136, 70 Cal.Rptr.2d 769, 774–75 (1998). That statute provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ.Code § 1717(a). Section 1717 further provides that the court "shall determine who is the party prevailing on the contract." *Id.* at § 1717(b)(1). "[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party pre-

vailing on the contract for purposes of this section." *Id.*

California also allows attorney's fees authorized by contract, statute, or law to be recovered as costs. Cal.Civ.Proc.Code § 1033.5(a)(10). Attorney's fees awarded under § 1717 are specifically included under the statutory definition of costs. *Id.* at § 1033.5(c)(5). The statute relating to the recovery of costs provides the following definition of prevailing party for the purposes of determining costs awards:

> "Prevailing party" includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the "prevailing party" shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034.

Cal.Civ.Proc.Code § 1032(a)(4).

With respect to Berkla's contract claim, the district court found that Berkla was not a prevailing party entitled to attorney's fees under § 1717, emphasizing that "Berkla's net recovery was *less than 3% of what he affirmatively sought before the jury at trial ....*" The district court similarly found that Berkla was not a prevailing party on his tort claim under § 1032, despite the fact that Berkla won a net monetary recovery. The district court concluded that § 1032, like § 1717, con-

---

**11.** The parties agree that state law governs Berkla's attorney's fees claim. *See Fobian v.*

*West. Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir.1991).

ferred discretion to award fees and that "[i]t would be perverse to find that California law permits differing attorneys' fees recovery standards under a contractual provision simply because an underlying, substantively identical claim might be denominated in contract or tort."

Berkla contends that the district court erred in analyzing his claim under § 1717 and that he should have been awarded fees under the mandatory provision of § 1032. We reject this argument. As we have already determined that Berkla is precluded from recovering in tort, attorney's fees would be available, if at all, only on the basis of his breach of contract claim. Section 1717 applies to Berkla's request for attorney's fees on his contract claim. *See Santisas v. Goodin,* 17 Cal.4th 599, 71 Cal.Rptr.2d 830, 840, 951 P.2d 399 (1998).

The standard for evaluating prevailing party status under § 1717 was set forth in *Hsu v. Abbara,* 9 Cal.4th 863, 39 Cal. Rptr.2d 824, 891 P.2d 804 (1995). In that case, the California Supreme Court held that:

> in deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by "a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions."

*Id.* at 833, 891 P.2d 804 (citation omitted); *accord Scott Co. v. Blount, Inc.,* 20 Cal.4th 1103, 86 Cal.Rptr.2d 614, 618, 979 P.2d 974 (1999). While "a plaintiff who obtains all

relief requested on the only contract claim in the action must be regarded as the party prevailing on the contract for purposes of attorney fees under section 1717," *Hsu,* 39 Cal.Rptr.2d at 832, 891 P.2d 804, a court could also determine that a party is not prevailing when it "receives only a part of the relief sought," *id.* (internal quotation and citation omitted). The court emphasized that "in determining litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.'" *Id.* at 833, 891 P.2d 804.

Under this standard, we conclude that the district court did not abuse its discretion in denying Berkla's attorney's fees. Berkla recovered only $23,502 in compensatory damages for breach of the NDA, although he sought more than $1.2 million. Although Berkla suggests that he obtained an "unqualified" win on his contract claim, it is clear from *Hsu* that a court is entitled to look at more than the issue of liability in determining prevailing party status, and to evaluate litigation success in light of the party's overall demands and objectives. In this case, these demands and objectives clearly involved a substantial financial payoff for Berkla. The jury, however, completely rejected Berkla's contractual damages theory, instead awarding damages consistent with the estimates offered by Corel's expert. Given the equitable considerations that animate prevailing party status under § 1717 and the deference owed to the district court, we conclude that the district court did not abuse its discretion in denying Berkla's attorney's fees request.

### 2. Costs

Despite finding that Berkla was the prevailing party under federal standards for determining eligibility for costs,[12] the dis-

---

12. The district court held, and the parties do not dispute, that federal law governs the

award of costs. *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160, 1167 (9th Cir.1995).

trict court denied Berkla's motion for costs on two grounds: (1) Berkla did not win an amount exceeding $75,000, the statutory minimum for diversity jurisdiction; and (2) Berkla unnecessarily extended the litigation by rejecting Corel's offers to settle the case for an amount far in excess of what Berkla eventually recovered.

 Federal Rule of Civil Procedure 54(d)(1) provides generally that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Although the rule creates a presumption in favor of awarding costs to a prevailing party, it also vests discretion in the district court to refuse to do so. *Ass'n of Mexican–American Educators v. California*, 231 F.3d 572, 591 (9th Cir.2000) (en banc). In exercising that discretion, a district court must "specify reasons" for its refusal to award costs. *Id.* Berkla argues that both of the district court's articulated reasons are insufficient to justify deviation from the presumptive award of costs to prevailing parties.

 We agree with Berkla that the district court erred in resting its denial of costs on his failure to recover the jurisdictional amount under the diversity statute. Under 28 U.S.C. § 1332(b), if a plaintiff recovers less than $75,000, "the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff." The district court relied on *Perlman v. Zell*, 185 F.3d 850 (7th Cir.1999), to support its conclusion that it had discretion under § 1332(b) to deny costs with respect to Berkla's state law claims.

Because subject matter jurisdiction here is not founded on diversity of citizenship, but on federal question and supplemental jurisdiction,[13] *Perlman* simply does not apply. In *Perlman*, although the plaintiffs pleaded a federal claim (RICO), that claim was dismissed on the merits. *See* 185 F.3d at 859 ("So Perlman is a loser on the question whether this was a federal case."). Here, Berkla partially prevailed on his federal claim.

The court specifically stated in *Perlman* that § 1332(b) stands for the general principle that "if the outcome shows that the case did not belong in federal court, then costs may be denied...." *Id.* at 859. But here, there is no question that this case did belong in federal court. Berkla's copyright claims clearly came under the court's federal question jurisdiction. Although Berkla's most significant copyright claims were dismissed on summary judgment, he was victorious on his pre-release claim, ultimately winning a stipulated judgment of $9,100. Although this amount may have been minimal in comparison to the large sum Berkla was seeking, nonetheless, it did not eliminate the basis for federal jurisdiction, making the district court's application of the § 1332(b) standard inappropriate. Moreover, Berkla was compelled to bring all of his claims in federal court, short of splitting his claims, because federal court jurisdiction over copyright claims is *"exclusive* of the courts of the states." 28 U.S.C. § 1338(a) (emphasis added).

 We further conclude that the district court erred in denying Berkla's costs on the ground that he failed to accept Corel's $400,000 settlement offer. The issue is whether it was a proper exercise of the district court's discretion to deny costs, even though Corel's offer did not comply with Federal Rule of Civil Procedure 68. Rule 68 provides:

13. Although the second amended complaint invokes diversity jurisdiction, as well as federal question and supplemental jurisdiction, because the district court unquestionably had federal question and supplemental jurisdiction, the allegation invoking diversity jurisdiction was surplusage.

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.

When a Rule 68 offer of judgment is made and rejected, and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed. R. Civ. Proc. 68. Berkla contends that he cannot be deprived of his costs without having received a Rule 68 offer of judgment. We agree.

■■■ Although no Ninth Circuit case speaks directly to this issue, other circuits have adopted Berkla's position in the analogous situation of determining attorney's fees awards after rejected settlement offers. *See Clark v. Sims,* 28 F.3d 420, 424 (4th Cir.1994) ("Because the district court limited appellants' recovery of attorney's fees based on a settlement offer which failed to meet the requirements of Rule 68, its decision must be vacated and this case remanded so that the court may reconsider the amount properly awardable."); *Ortiz v. Regan,* 980 F.2d 138, 141 (2d Cir.1992) (finding that, where the defendant could have made a formal offer of judgment pursuant to Rule 68, but chose not to use this procedure, the plaintiff's rejection of a settlement offer should not operate to reduce an otherwise appropriate fee award); *Cooper v. Utah,* 894 F.2d 1169, 1172 (10th Cir.1990) (reversing district court's reduction of attorney's fees based on settlement negotiations where the defendants had not "availed themselves of an offer of judgment pursuant to Rule 68"). Corel cites *Meister v. Regents of the Univ.,* 67 Cal. App.4th 437, 78 Cal.Rptr.2d 913, 923 (1998), which rejects these cases in determining that California law does not prevent "a trial court from considering a non-

statutory settlement offer in determining the amount of a reasonable attorney's fee award." *Meister,* however, is a state law case and does not control the issue here. We agree with the reasoning of our sister circuits that, absent a Rule 68 offer of judgment, a plaintiff's failure to accept a settlement offer that turns out to be less than the amount recovered at trial is not a legitimate basis for denying an award of costs. To hold otherwise would render Rule 68 largely meaningless. It was therefore error for the district court to deny Berkla costs based on Corel's non-Rule 68 settlement offer. Accordingly, on remand, the district court should award to Berkla his properly taxable costs.

## C. Corel's Motion for Attorney's Fees

On its cross-appeal, Corel contends that the district court abused its discretion in denying its request for attorney's fees on Berkla's copyright claim. The Copyright Act provides:

In any civil action under [the Copyright Act], the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

The Supreme Court has adopted the "evenhanded" approach to the award of attorney's fees in copyright cases. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) ("Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."). In exercising this discretion, the Court noted that courts may be guided by

the factors articulated by the Third Circuit in *Lieb v. Topstone Indus.*, 788 F.2d 151, 156 (3d Cir.1986), which include "frivolousness, motivation, objective unreasonableness ... and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n. 19, 114 S.Ct. 1023 (quoting *Lieb*). This Court has held that "while courts may take the *Lieb* factors into account, they are 'nonexclusive.' Even so, courts may not rely on the *Lieb* factors if they are not 'faithful to the purposes of the Copyright Act.' Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996).

Corel argues that its successful defense of Berkla's infringement claims on the ground that Berkla's images contained no protectable expression furthered a primary objective of the Copyright Act—to "promote the Progress of Science and useful Arts" by "encourag[ing] others to build freely upon the ideas and information conveyed by a work." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349–50, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). It contends that its defense of this suit fostered the important concept of distinguishing unprotectable ideas from protectable expression.

 We find this argument unpersuasive and agree with the district court that Corel's behavior in this case did not advance the purposes of the Copyright Act. In denying fees, the district court found that Corel's use of Berkla's nozzles to model its own Photo Paint images, while not technically violating the virtual identity standard of copyright infringement, nevertheless constituted a highly questionable business practice. The district court emphasized:

> Most important ... is the fact that the jury found Corel had acted improperly in utilizing Berkla's databases for modeling of its own. While the jury's finding of maliciousness or oppressiveness or fraud on the part of Corel in breaching Berkla's confidence could be questioned, Corel has chosen not to contest these findings in post-trial motions. The jury's unaltered liability verdict speaks loudly in proclaiming that Corel should not be rewarded for prevailing on a finding regarding copyright standard of proof in light of the found misdeeds on related issues.

It would be inconsistent with the Copyright Act's purposes to endorse Corel's improper appropriation of Berkla's product by awarding fees.[14]

 Moreover, the decision to award attorney's fees to prevailing defendants remains within the court's sound discretion. *Fogerty*, 510 U.S. at 534, 114 S.Ct. 1023. An evaluation of the *Lieb* factors demonstrates that there is no reason to conclude

14. Corel contends that the district court erred in considering the jury's small liability verdict against Corel as the most important factor in its decision to deny fees since the liability verdict related to state law claims that were completely independent of the copyright claims. Corel also argues that district court erred in considering the jury's finding that Corel's conduct was malicious and oppressive since this finding had no legal effect in light of the district court's decision to strike punitive damages. Corel's arguments here fail. The district court was allowed to assess Corel's overall conduct, taking into account its breach of the NDA and pre-release copyright violation, in making its fee determination. Further, although Corel is correct that the district court struck punitive damages, it did so based on an analysis of the availability of such damages under state law for the tort of breach of confidence. The district court never ruled on whether Corel acted with fraud, malice, or oppression and was entitled to consider the jury's verdict as a factor in evaluating the appropriateness of awarding fees to Corel.

that the district court abused its discretion. With respect to the "frivolousness" factor, Corel argues that Berkla's position was frivolous since he never presented any evidence that Corel had access to his Tubular Text images. Although this might be true, the Tubular Text databases were only one aspect of Berkla's copyright claims and there is no reason to conclude that the district court abused its discretion in ruling that Berkla's infringement claims regarding his Garden Hose images were nonfrivolous. Further, an analysis of the district court's decision clearly shows that frivolousness was appropriately treated as one among many considerations in denying fees.

The *Lieb* court also mentioned "objective unreasonableness" as a factor to consider in awarding fees. Corel contends that Berkla was objectively unreasonable in pursuing his copyright claim for several reasons: (1) Corel offered Berkla $400,000 to resolve the claims four months prior to trial; (2) there was no evidence that Corel had access to Berkla's Tubular Text images; (3) the law of virtual identity was well-settled; and (4) Corel stipulated to liability with respect to the release of images to beta testers. These reasons, however, do not justify overturning the district court. The rejected settlement offer related to the state law issues, as well as the copyright claim, and therefore should not be dispositive of the fees question. Moreover, Berkla presented a valid copyright claim related to his Garden Hose images. He lost on summary judgment, but that does not mean that his claim was objectively unreasonable—in fact, the district court conceded that Berkla's work contained protectable expression and that, although not virtually identical, Corel's Photo Paint images were substantially similar to Berkla's. Finally, the fact that Berkla persisted in his claims despite Corel's liability stipulation on the copyright claim does not show objective unreasonableness, given that Berkla was pursuing state law claims as well and Corel did not concede liability or damages on the pre-release claim until fairly late in the proceedings.[15]

Finally, Corel argues that fees are appropriate punishment for Berkla under the *Lieb* factors related to "motivation" and "deterrence," suggesting that Berkla, who had a history of litigiousness, was motivated by a desire to extract a licensing agreement from Corel. The sanction of attorney's fees, Corel contends, would deter Berkla's "irresponsible behavior" in the future. The district court did not, however, abuse its discretion in finding that Berkla's prior entanglement with Fractal did not warrant attorney's fees for Corel in this case. As the district court noted, Berkla "did not initiate any action against Corel until he was told that Corel had utilized his databases in its product." Thus, Corel was not a blameless victim in this lawsuit—its admittedly illegal behavior prompted Berkla's complaint. Corel's attempt to paint Berkla as a litigious schemer who "set up" Corel obscures Corel's underlying wrongful conduct and is insufficient to warrant overturning the district court's denial of fees. We conclude that the district court did not abuse its discretion in denying Corel attorney's fees on the copyright claim.

---

**15.** Corel cites *Screenlife Establishment v. Tower Video, Inc.*, 868 F.Supp. 47, 50 (S.D.N.Y. 1994), and *Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F.Supp. 532, 541 (C.D.Cal. 1995), but these cases do not aid its position. Both dealt with situations where plaintiffs pressed on with their lawsuits despite lacking any facially legitimate claims that would have justified continuing the action. In contrast, this case involved a clear pre-release infringement of Berkla's nozzles coupled with legitimate state law claims upon which Berkla ultimately recovered at trial.

## IV. CONCLUSION

For the foregoing reasons, in No. 00–15166, the judgment is affirmed. In No. 00–15508, the post-judgment order denying attorney's fees is affirmed. In No. 00–15350, the post-judgment order is affirmed as to attorney's fees and reversed as to costs and remanded. Each party shall bear his or its own costs on appeal.

**AFFIRMED, except as to costs, and REMANDED.**

SEDWICK, District Judge, concurring in part and dissenting in part:

I concur in the majority's opinion on all issues, save one. I respectfully dissent from the holding that the district court erred when it denied an award of costs to Berkla because Corel failed to make an offer of judgment pursuant to Federal Rule of Civil Procedure 68. The majority adopts an inflexible rule that it is always error to deny costs on the basis that a prevailing party ignored an offer to settle and thereby prolonged litigation, unless the defending party's offer to settle was made pursuant to Rule 68.

The majority begins its analysis with the observation that Federal Rule of Civil Procedure 54(d) provides for an award of costs to a prevailing party unless the court otherwise directs. To be more precise, it is Rule 54(d)(1) addressing costs other than attorneys' fees that is pertinent to the disputed issue.[1] The majority then reasons that because Corel did not make an offer of judgment pursuant to Rule 68, the district court could not rely on the fact that Berkla ultimately recovered far less than Corel had informally offered in deciding to deny costs to Berkla.

There are several problems with the majority's approach. First, by failing to take into account the differences between Rule 54(d)(1) and Rule 68, the majority conflates the two rules and substitutes the simple comparative analysis and mandatory outcome dictated by Rule 68 for the exercise of discretion authorized by Rule 54(d)(1). No wonder the majority opines that to hold otherwise than it does would "render rule 68 largely meaningless." Second, the offer actually made by Corel could not reasonably have been made in the form of a Rule 68 offer. Third, Rule 54(d)(1) gives trial courts discretion to deny costs and logic compels the conclusion that needlessly prolonging litigation is one of the reasons that would support a decision to deny costs. Rule 54(d)(1). Fourth, there is no authority in this circuit to support the inflexible rule adopted by the majority, and the cases relied upon from other circuits do not provide well reasoned support for the rule adopted by the majority.

Rule 68 provides that a defending party may offer to allow the party prosecuting a claim to have judgment against the defending party "for the money or property or to the effect specified in the offer." If the offer is not accepted, its costs shifting efficacy is then determined by a comparison of the judgment resulting from the trial with the offer. Rule 68 authorizes more relief than Rule 54(d)(1). It authorizes shifting costs, not merely the denial of costs to one party. There is another significant difference between the two rules. The costs shifting feature of Rule 68 is mandatory; when the judgment obtained is less favorable than the offer, the offeree "must" pay the costs. In contrast, Rule 54(d)(1) operates through the well informed discretion of the trial court. Clearly, the trial court was attempting to

---

1. Of course, Rule 54(d)(2) contemplates an award of "attorneys' fee costs", but that is not the rule with which we are concerned at the moment, for we have separately addressed the denial of "attorneys' fee costs" and affirmed the district court's decision to deny them.

exercise the discretion afforded by Rule 54(d)(1), not attempting to apply Rule 68. Nevertheless, the majority reverses his decision, because no Rule 68 offer was made.

The offer of compromise actually made by Corel was made orally at a settlement conference and the memorialized in a July 7, 1999 letter from Corel's lawyer to Berkla's lawyer which reads in pertinent part:

> This letter is to confirm the settlement offer made by Corel at the conclusion of the settlement conference on Tuesday, July 6, 1999. As communicated to you by Judge Hollows, Corel is willing to settle this case for U.S. Four Hundred Thousand Dollars ($400,000) in exchange for a general release of any and all claims against Corel and any affiliated or subsidiary companies, relating to any graphical content contained within any version of CorelDRAW or Corel PHOTOPAINT, as well as all future versions of these products. The terms of the settlement would also include dismissal with prejudice of the current lawsuit, a grant by Mr. Berkla to Corel of a perpetual paid-up license for any nozzle images Mr. Berkla's [sic] contends or could have contended were infringed by Corel, and Mr. Berkla's covenant not to sue Corel in the future for any claims of misappropriation or infringement of his Garden hose, Tubular text of Tubular neon nozzle images. The $400,000 payment would be in satisfaction of all claims, damages, costs, expenses, interest and attorneys fees sought in your action.[2]

The offer sets out terms that go beyond those that would be included in a judgment against Corel for $400,000. Most notably, the offer is contingent on a perpetual paid-up license for Berkla's nozzle images. This would render it very difficult to perform the simple direct comparison of offer with result upon which the mandatory cost shifting feature of Rule 68 turns. In short, the offer made could not reasonably have been made pursuant to Rule 68. Thus, the rule adopted by the majority has the perverse effect of reducing the incentive to make offers of compromise that cannot be molded into a Rule 68 form by eliminating any role they might play in the application of Rule 54(d)(1).

In *Association of Mexican–American Educators v. State of California*, 231 F.3d 572 (9th Cir.2000), the *en banc* court made it clear that there are many reasons why costs might be denied to a prevailing party pursuant to Rule 54(d)(1) in addition to punishing the prevailing party for some from of misconduct. However, the *en banc* court left in place the notion that one reason for denying costs is to punish inappropriate behavior by the prevailing party. Surely, needlessly prolonging litigation after a reasonable offer of compromise has been placed on the table is conduct that could support a decision not to award costs. Yet, the majority's rule forecloses consideration of such conduct in every case where the defending party's offer of compromise did not take the form of a Rule 68 offer.

The majority concedes that no case from this circuit supports its rule. The three cases relied on from other circuits do not analyze the relationship between Rules 54(d) and 68. The first cases is *Clark v. Sims*, 28 F.3d 420 (4th Cir.1994), in which prevailing civil rights plaintiffs sought to recover attorneys' fees pursuant to 42 U.S.C. § 1988. There the trial court treated an informal offer of compromise exactly as if it had been an offer of judgment under Rule 68, and limited the prevailing parties' recovery of attorneys' fees to those incurred prior to the date of the supposed offer. In reversing and remanding, the appellate tribunal explained that where a

---

**2.** Appellant's Excerpts of Record, Vol. 4 at p. 813.

prevailing party in a civil rights action has recovered only nominal damages, it is necessary for the trial court to evaluate a considerable number of factors in deciding what costs to award. *Clark* contains no analysis of the interplay between Rule 54(d) and Rule 68.

In the second case, *Ortiz v. Regan*, 980 F.2d 138 (2d Cir.1992), plaintiff brought suit in March of 1990 against a state official claiming that she had been deprived of pension benefits without due process of law. In April of 1990, defendant offered to give plaintiff a *de novo* hearing pursuant to New York law. Eventually, the trial court issued a series of orders. The first denied defendant's motion to dismiss on the grounds that offering a post-deprivation hearing did not eliminate a claim based on the failure to provide a pre-deprivation hearing. The second order granted Ortiz summary judgment, but awarded only nominal damages. The third order limited Ortiz's recovery of attorneys' fees under 42 U.S.C. § 1988 to those incurred prior to the April 1990 offer of a *de novo* hearing. Ortiz appealed the third order, and it was held that the trial court erred in two respects. First, the award of nominal damages was adequate to support a substantial award under § 1988. Second, it was inappropriate to consider the April offer to conduct a hearing as a cut-off point after which no fees could be awarded, because a court ought not to reply on prior negotiations and hindsight to determine whether to cut off the award of fees lest those with meritorious claims be dissuaded from pursuing them. Then in a passing remark, the appellate court also noted that defendant could, but did not, make an offer under Rule 68 as an additional reason for finding error in using the April cut-off. Once again, the case cited is a civil rights case which neither articulates nor compels the rule of general application adopted by the majority in this case. *Ortiz* is silent on the relationship between Rule 54(d) and Rule 68.

The third case relied upon by the majority is *Cooper v. Utah*, 894 F.2d 1169 (10th Cir.1990). That case, too, involved a request for attorneys' fees under § 1988. The opinion focuses on a double counting error committed by the trial court. Specifically, the appellate court wrote at some length to make the point that reducing the number of hours for which attorneys' fees may be awarded because the case was not difficult and then further reducing the award on the basis that the issues were simple was analytically flawed. The *Cooper* court's discussion of Rule 68 is considerably more attenuated and fails to even mention Rule 54(d). It consists in its entirely of the following conclusory remarks.

> Additionally, we note that the court's downward adjustment of fees based on settlement negotiations is not well-founded. Rule 68 Fed. R. Civ. P. provides a practical tool by which parties may protect against costs. Nothing in the record indicates that the Defendants–Appellees availed themselves of an offer of judgment pursuant to Rule 68.

The *Cooper* court states a conclusion without giving any reason to support it. Regrettably, the majority's analysis here, consisting as it does of a statement adopting the "reasoning of our sister circuits," is equally bereft of rationale.

Had my understanding of Rule 54(d)(1) prevailed, the issue would then become whether the district court adequately considered the conditions attached to the $400,000 payment when it decided that Berkla needlessly prolonged the litigation. Chief among the conditions was a requirement that Berkla give Corel a perpetual paid-up license. The parties dispute the significance of that condition. Corel takes the position that such a condition is typical

of settlements in cases of this sort and does not really represent a significant impediment to accepting the offer. Berkla maintains that the paid-up license condition was a significant concession which warranted his rejection of the settlement offer. Which of these competing views is supported by the facts should be evaluated in the first instance by the trial judge to whom discretion has been granted by Rule 54(d)(1). Accordingly, this issue would have to be remanded for further proceedings in the district court were my view of Rule 54(d)(1) also the majority's view.